Frank BROWN, Jr., Plaintiff,

v.

Don NESTER, Defendant.

Civ. A. No. E90–0006(L).

United States District Court, S.D. Mississippi, E.D.

Nov. 28, 1990.

Frank Brown, Jr., pro se.

Henry C. Clay, III, Asst. Atty. Gen., Jackson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

Plaintiff Frank Brown, Jr. brought this action pursuant to 42 U.S.C. §§ 1983 and 1988 against defendant Don Nester, a field parole officer with the Mississippi Department of Corrections, in his individual capacity, charging that defendant violated his Fifth and Fourteenth Amendment rights under the United States Constitution.[1] This cause is presently before the court on the motion of defendant to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Proce-

dure. The court is of the opinion that the motion is well taken and should be granted.

The following, derived from plaintiff's complaint, represents a brief synopsis of what the court perceives to be his claims. On June 2, 1989, while on parole for the commission of some unspecified offense, plaintiff was stopped by a Meridian police officer, allegedly for a traffic violation. The officer arrested him and carried him to a Charter Food Store, where a store employee was asked to view him; plaintiff was a suspect in an armed robbery investigation. Plaintiff contends that although the employee did not positively identify him as having been involved in the robbery, he was nevertheless transported to the police department where he was charged with armed robbery and attempted armed robbery, and was thereafter incarcerated in the Lauderdale County Jail.

On June 9, 1989, defendant served plaintiff with notice of a preliminary hearing scheduled for June 21, 1989 for review of possible violation of the following parole conditions:

Condition 2. Failure to report as directed.

Condition 8. Possession of a deadly weapon, knife.

Condition 10. Committing the offense of armed robbery.

Condition 11. Violation of curfew.

Plaintiff states that a hearing was held, as scheduled, before a hearing officer from the Mississippi Department of Corrections which was followed by a second hearing before the State Parole Board on October 25, 1989. Brown's parole was revoked and he is currently incarcerated in the custody of the Mississippi Department of Corrections, South Mississippi Correctional Institution in Leakesville, Mississippi.

Plaintiff's first complaint is that Nester, contrary to the conditions of his parole agreement which provided for monthly re-

---

1. Plaintiff's complaint recites additionally that defendant violated 42 U.S.C. §§ 1984, 1985 and 1990. However, Congress has yet to enact a section 1984. Section 1985 concerns conspiracies and plaintiff has not alleged the involvement of any one other than defendant in the alleged civil rights violations. And, section 1990, concerning the duty of marshals and deputy marshals to obey and execute warrants or other process, clearly has no applicability to plaintiff's allegations.

porting by plaintiff, discriminated against him as to condition 2 by having required him to report once a week—every Friday—while he allowed other parolees to report on a monthly basis. It appears to be Brown's assertion that he did not violate the conditions of his parole since his parole agreement required only that he report once a month, and that Nester's recommendation for revocation based on this alleged violation infringed his constitutional guarantee of equal protection and due process. Plaintiff charges additionally that despite the hearing officer's determination at the initial revocation hearing that condition 8 had not been violated, Nester falsely and discriminatorily—in violation of the Fourteenth Amendment—allowed the violation to be entered in his report to the State Parole Board, which offended his due process rights. Plaintiff further alleges that defendant discriminated against him and caused the deprivation of his liberty without due process by falsely alleging in his report to the State Parole Board that he committed armed robbery when in fact he was only a suspect and was never indicted for the offense. Finally, Brown asserts that the defendant should not have utilized his curfew violation as a reason for recommending parole revocation since the violation occurred when he was en route to his employment. He reasons that defendant violated his liberty right to continued employment because the curfew violation occurred in connection with his employment.[2]

■ Defendant has moved for dismissal of plaintiff's complaint against him on the basis that he enjoys qualified immunity from liability as to the claims made against him. In the court's opinion, though, the immunity applicable in this case is not a qualified immunity from liability, but rather absolute liability from suit. Regarding absolute immunity, the Fifth Circuit observed in *Hodorowski v. Ray*, 844 F.2d 1210 (5th Cir.1988), that "courts have long recognized that certain individuals, as a consequence of their function, merit abso-

lute immunity to section 1983 liability for actions within the scope of that function." *Hodorowski*, 844 F.2d at 1212. One category of officials who are accorded such absolute immunity includes officials who perform functions analogous to those of prosecutors. *Id.* at 1213. In *Farrish v. Mississippi State Parole Board*, 836 F.2d 969 (5th Cir.1988), the court reversed the district court's imposition of monetary liability against a parole revocation hearing officer and the parole officer who, at the revocation hearing, presented evidence in support of his recommendation of revocation, on the basis that both were absolutely immune from suit. Though the court agreed that there had been a due process violation, the court determined that the parole revocation process was adjudicatory in nature, thus implicating considerations of absolute immunity. The court then concluded that the parole officer served in a prosecutorial role during the revocation proceeding:

> To the extent that [the parole officer] was responsible for Farrish's deprivation of due process, it was because he was "functionally comparable" to a prosecutor, and thus he should receive the immunity afforded to persons in that role.

*Farrish*, 836 F.2d at 976 n. 13 (citing *Butz v. Economou*, 438 U.S. 478, 516–17, 98 S.Ct. 2894, 2915–16, 57 L.Ed.2d 895 (1978); *see also Johnson v. Kegans*, 870 F.2d 992, 997 (5th Cir.) (individuals who function before parole board in same capacity as prosecutor, witness or probation officer enjoy absolute immunity), *cert. denied*, —— U.S. ——, 109 S.Ct. 3250, 106 L.Ed.2d 596 (1989); *cf. Freeze v. Griffith*, 849 F.2d 172, 174–75 (5th Cir.1988) (probation officers immune from liability for preparing and submitting presentence report). In the case at bar, plaintiff's claims relate to Nester's performance of his function during the parole revocation process inasmuch as his claims are that Nester provided false information to the hearing officer and the Pa-

---

2. The court notes that Brown has specifically disavowed any intention to secure release from incarceration as relief in this action; he seeks only monetary damages. Accordingly, his claim does not sound in habeas corpus. *Cf. Scales v. Mississippi State Parole Bd.*, 831 F.2d 565, 566 (5th Cir.1987).

role Board. These are precisely the types of claims for which absolute immunity is recognized. In *Johnson,* the court explained the rationale for absolute immunity in this context:

> The "cluster" of absolute immunities that protect participants in judicial and other adjudicatory proceedings exist to help guarantee an independent, disinterested decision-making process. These absolute immunities prevent the harassment and intimidation that could otherwise result if disgruntled litigants—particularly criminal defendants and inmates, both of whom have their liberty at stake—could vent their anger by suing either the person who presented the decision maker with adverse information or the person or persons who rendered an adverse decision.

*Johnson,* 870 F.2d at 996–97. Because the court concludes that the defendant has absolute immunity as to plaintiff's claims, it follows that plaintiff has not stated a cognizable claim against Nester and his complaint must be dismissed.

■ The court would note, though, that in any event, even in the absence of immunity, dismissal of the complaint is proper for plaintiff has not stated any claim of a constitutional violation by the defendant. The due process clause of the Fourteenth Amendment protects a state parolee's interest in his continued liberty. *Morrissey v. Brewer,* 408 U.S. 471, 482, 92 S.Ct. 2593, 2600–01, 33 L.Ed.2d 484 (1972) (cited in *Farrish v. Mississippi State Parole Bd.,* 836 F.2d 969, 971 n. 2 (5th Cir.1988). Thus, procedural due process must accompany any parole revocation decision. In *Morrissey,* the Court established a two-step procedure for the provision of minimum due process in parole revocations. The first step occurs after the parolee is arrested and detained and consists of an informal inquiry in the nature of a 'preliminary hearing,' conducted by an uninvolved person, "to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." *Id.* The parolee must be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe there has been a parole violation, and the notice must state what parole violations have been alleged. If, following the initial hearing, a determination is made by the hearing officer that probable cause does exist to believe the parolee has violated the conditions of his parole, the parolee must, within a reasonable time after he is taken into custody, be afforded an opportunity for a second hearing before the state parole authority for the purpose of resolving any contested relevant facts and considering whether which will be utilized in the revocation process, the following minimum requirements must be provided:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of the evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* 92 S.Ct. at 2604.

■ In the case *sub judice,* plaintiff's complaint neither explicitly nor implicitly challenges the revocation procedure as having been lacking as to any of these essential due process requisites.[3] Plaintiff alleges that the notice of hearing, which included a statement of the alleged violations, was served upon him by defendant two weeks prior to the initial informal hearing. That notice, which was attached as an exhibit to plaintiff's complaint, informed plaintiff of his right to be represented by counsel and advised him that he would be "allowed to be present, speak, present evi-

3. The procedure adopted for parole revocation under Mississippi law is set forth at Miss.Code Ann. § 47–7–27 (1990).

dence, confront and cross-examine any witness against [him]." And he does not deny that the hearing was conducted in a manner consistent with the procedure described in the notice and by the Court in *Morrissey.*

Furthermore, Brown does not challenge the impartiality of the hearing officer at the initial hearing, or the State Parole Board at the subsequent formal hearing. Rather, he asserts only that the defendant parole officer, who recommended revocation but was not responsible for the revocation of his parole, had a bias against him motivated by some unidentified discriminatory animus. He claims that the defendant presented false information to the Parole Board, yet he does not contend that he was denied an opportunity to refute that information. He asserts that certain of the alleged violations did not occur or occurred for legitimate reasons, yet he does not claim that he was deprived of the chance to present what he claimed were the true facts or demonstrate mitigating circumstances at either stage of the revocation proceeding.[4]

In summary, therefore, it is manifest that plaintiff has not stated a claim for any due process violation in connection with the parole revocation procedures utilized in his case. He does not impugn the procedures used, but charges only that the defendant parole officer formed biased opinions about him which caused defendant to make false allegations concerning plaintiff in defendant's report to the Parole Board. His due process claim fails as a matter of law.[5]

Based on the foregoing, it is ordered that defendant's motion to dismiss should be granted and plaintiff's complaint dismissed.

A separate judgment shall be entered in accordance with Federal Rule of Civil Procedure 58.

---

4. In fact, plaintiff alleged in his complaint that despite false information provided by Nester concerning his alleged involvement in an armed robbery, the State Parole Board was aware that there were no pending felony charges against him.

5. Though plaintiff has attempted to allege various equal protection violations by defendant, it appears that his true claim is that defendant was motivated to violate plaintiff's due process rights because of some bias against him.