# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-31166

United States Court of Appeals
Fifth Circuit

**FILED**
September 23, 2015

Lyle W. Cayce
Clerk

TOP DOLLAR PAWN, GUN, & CAR AUDIO #5, L.L.C.,

      Plaintiff - Appellant

v.

WILLIE L. SHAW, JR., in his official capacity as Chief of Police; STEVE PRATOR, in his official capacity as Sheriff; TERRI SCOTT, in her official capacity as City Attorney; CITY OF SHREVEPORT,

      Defendants - Appellees

-------------------------------------------------------------
Cons/w 14-31178

TOP DOLLAR PAWN, GUN, & CAR AUDIO #5, L.L.C.,

      Plaintiff - Appellant

v.

CADDO PARISH; WILLIE L. SHAW, JR., in his individual capacity as Chief of Police; STEVE PRATOR, in his individual capacity as Sheriff; CHARLES R. SCOTT, Individually & in his official capacity as District Attorney; TERRI SCOTT, in her individual capacity as City Attorney; CITY OF SHREVEPORT,

      Defendants - Appellees

Appeals from the United States District Court for the
Western District of Louisiana
USDC No. 5:12-CV-577

No. 14-31166

Before REAVLEY, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:*

This case involves appellant Top Dollar Pawn, Gun & Car Audio #5, L.L.C's ("Top Dollar") challenge to the policies or customs by which area police seize allegedly stolen merchandise off its store shelves and turn it over to the property's alleged rightful owners without a hearing.  To prosecute this challenge, Top Dollar sued numerous officials and municipal entities.  All claims against some defendants were dismissed following Rule 12(b)(6) motions.  After discovery, the trial court granted summary judgment in favor of the remaining defendants.

On appeal, Top Dollar challenges all of these dispositive rulings.  Despite a veritable medley of parties, dispositions, and distinct legal arguments, summary judgment is proper as to all defendants if, as the trial court found, Top Dollar's claims are simply untimely.  Because we agree with the trial court that the claims are prescribed, we do not address other issues raised on appeal.

This case involves seizures occurring from August 2005 to December 2010.[1]  Because pawn shops like Top Dollar have due process rights to the pledged property sold in their stores, Louisiana law provides a process by which allegedly stolen goods are handled and, after a hearing, returned either to the original owner or to the pawnshop.  *See* La. R.S. Ann. § 37:1805.  While the law provides Top Dollar with an orderly method whereby its rights should be protected, Top Dollar did not file this lawsuit until 2012.  As will be seen, its failure to file within a year of the last alleged seizure defeats this litigation.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Initially, a pair of 2011 seizures were also at issue.  It is now established that neither can support a viable claim for relief.  One of the seizures was made by a police department that is not a defendant.   The other alleged seizure was not a seizure at all but a purchase.

No. 14-31166

Top Dollar cannot privately stew over alleged constitutional violations and then belatedly assert its rights.

For several years, police officers from the Shreveport Police Department and Caddo Parish Sheriff's Office have visited Top Dollar, a pawn shop, to identify and seize allegedly stolen goods and return them to their alleged original owners. Notwithstanding the detailed statutory scheme, officers from both departments repeatedly seized allegedly stolen property and turned it over to its alleged owners without a hearing at all. The Caddo Parish Sheriff's Office described the process as follows:

> [W]here there is no dispute as to ownership, the Sheriff's Office places the item on hold at the pawn shop, places the item in the property room at the Caddo Parish Sheriff's Office, or provides same to the person identifying the item. As to the latter, such a procedure would not be utilized if the pawn shop disputed the individual's report of ownership.

The Shreveport Police Department described a substantially similar policy.

Top Dollar's opposition to these practices began as far back as 2005 when the pawn shop's owner hired attorneys to "communicate his objections to local law enforcement and prosecutors in Caddo Parish and dispute the process utilized by law enforcement and prosecutors in their interactions with" Top Dollar. After years of alleged due process violations, Top Dollar finally filed suit under 42 U.S.C. § 1983 on March 6, 2012. After discovery, it became clear that the particular seizures representing the basis of Top Dollar's action occurred between August 31, 2005 and December 17, 2010.

The parties rightly agree that a one-year prescriptive period applies.[2] *See Cruz v. Louisiana ex rel. Dep't of Pub. Safety & Corr.*, 528 F.3d 375, 378

---

[2] We borrow the state statute of limitations as the federal residual statute of limitations (28 U.S.C. § 1658) does not apply because Top Dollar's claims neither "arise under" nor are "made possible by" a post-1990 Congressional enactment. *Frame v. City of Arlington*, 657 F.3d 215, 236-37 (5th Cir. 2011) (en banc).

No. 14-31166

(5th Cir. 2008). They dispute the point at which Top Dollar's claims accrued and this one-year prescriptive period began to run.

"[T]he question of when a federal cause of action accrues is a matter of federal, not state, law." *Watts v. Graves*, 720 F.2d 1416, 1423 (5th Cir. 1983) (per curiam). "Under federal law, a cause of action accrues the moment the plaintiff knows or has reason to know of the injury that is the basis of his complaint." *Helton v. Clements*, 832 F.2d 332, 334–35 (5th Cir. 1987). Put differently, the prescriptive period "in a § 1983 action does not run until the plaintiff is in possession of the 'critical facts' that he has been hurt and the defendant is involved." *Freeze v. Griffith*, 849 F.2d 172, 175 (5th Cir. 1988) (quoting *Lavellee v. Listi*, 611 F.2d 1129, 1131 (5th Cir. 1980)).

According to the defendants, this is an easy case: because none of the allegedly unconstitutional seizures occurred in the year preceding commencement of this action, the suit is time-barred. The trial court agreed: "Top Dollar had one year from the 2010 'date seized' to assert its Section 1983 claims . . . . Because it failed to file its lawsuit until March 2012, the lawsuit is untimely." *Top Dollar Pawn, Gun & Car Audio No. 5 LLC v. Caddo Parish*, Case No. 5:12-CV-577, 2014 WL 4470572, at *4 (W.D. La. Sept. 10, 2014).

Top Dollar now argues that its claims did not accrue until 2011, when it "learned that the government had utterly failed" to comply with statutory procedure set forth in La. R.S. Ann. §37:1805.[3] However, as the district court observed, "[i]n opposing the prescription argument, Top Dollar seems to

---

[3] Additionally, Top Dollar argues claims based on an alleged 2012 seizure—a seizure that took place after this action was filed—are not prescribed. When opposing summary judgment, Top Dollar's "Response to Defendants' Statements of Undisputed Fact" confirmed defendants' understanding that only seizures predating commencement of the lawsuit were at issue. It cannot change course and present a new theory on appeal.

concede that its claims are prescribed on their face."[4]  *Top Dollar*, 2014 WL 4470572, at *4.  Top Dollar's accrual argument was not presented to the trial court and has therefore been waived.  *See XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd.*, 513 F.3d 146, 153 (5th Cir. 2008).

In any event, the argument is meritless.  At the moment of each seizure, Top Dollar possessed the critical facts necessary to know it had been injured and that the defendants were responsible.  *See Freeze*, 849 F.2d at 175.  More specifically, Top Dollar knew or should have known, at the moment of each seizure, of the defendants' failure to comply with La. R.S. Ann. § 37:1805.

Based on the familiar and fundamental constitutional right to due process, La. R.S. Ann. § 37:1805 sets forth a specific method by which allegedly stolen merchandise discovered in pawnshops is to be returned to its rightful owner.  Where criminal proceedings have been "initiated and continued,"[5] the item may be seized, and "[u]pon delivery of [the allegedly stolen property] to the appropriate law enforcement or judicial authority, the pawnbroker shall be given a receipt indicating the date of delivery, a description of the thing delivered, a docket or other relevant number, the style of the case, and the name of the person to whom delivery was made."  La. R.S. Ann. § 37:1805(D). A "determination as to ownership" must then be made in a "criminal proceeding," La. R.S. Ann. § 37:1805(C)(1), and if the property is "deemed stolen" during the course of the proceeding, the pawnbroker must return it "to the owner at no cost."  La. R.S. Ann. § 37:1805(B).

---

[4] Rather than arguing that the claims accrued in 2011, Top Dollar pressed a "continuing violation" argument before the trial court.  That argument, unraised on appeal, has been abandoned.  *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994).

[5] When a "civil proceeding" has been initiated, the allegedly stolen property "shall be retained by the pawnbroker."  La. R.S. Ann. § 37:1805(E).  Actual ownership rights are determined within the civil proceeding.  *See* La. R.S. Ann. § 37:1805(C)(1).  Notably, the statute does not contemplate police involvement in the absence of criminal proceedings.

No. 14-31166

Key to our prescription analysis is the "receipt" requirement established by subsection (D). The receipt described therein offers not only proof of receipt but also a ready means for the pawnbroker to track all seized property. Here, the evidence is that the Shreveport Police Department and Caddo Parish Sheriff's Office ignore this requirement. There are no receipts conforming to subsection (D) in the record, and the departments' own description of their practices do not suggest compliance. Additionally, according to Top Dollar's briefing, both departments withheld "information regarding prosecution," and "[t]he pawnbroker is never given an actual case number for a criminal case, and receives no notice of a trial date or disposition of an item." Instead of being apprised of the style of the case, Top Dollar must "guess whether a particular prosecution matches up with a particular seizure and/or defendant."

The police departments' non-compliance with subsection (D)'s receipt requirement put Top Dollar on notice that its rights were being violated. The police departments' failure to follow the follow the La. R.S. Ann. § 37:1805 process was plain and visible.[6] Top Dollar argues that the prescription period should not have begun to run because the police departments "concealed their actions," but any such concealment is inseparable from the failure to comply with subsection (D). Because Top Dollar at least had "reason to know" of its

---

[6] The police departments argue that La. R.S. Ann. § 37:1805 is implicated only where a pawnbroker formally disputes ownership. The trial court agreed, registering its "belief that Top Dollar must make some sort of an affirmative election to dispute ownership such that a civil or criminal proceeding to determine ownership would commence." *Top Dollar*, 2014 WL 4470572, at *6 n.2. We have already recognized that the obligations of police departments arise "[u]pon delivery" of the allegedly stolen property. The statute does not reference "some sort of an affirmative election," let alone explain how and when such an election would be made. Rather, the statute puts the onus on third-party claimants to either dispute ownership in a civil proceeding, *see* La. R.S. Ann. § 37:1805(E), or to "initiate or cooperate in the criminal proceeding against the alleged perpetrator," *see* La. R.S. Ann. § 37:1805(C)(2). We reject the defendants' argument that La. R.S. Ann. § 37:1805 operates only where the pawnbroker formally disputes ownership.

No. 14-31166

injury at the time of seizure, its procedural due process claims accrued at that point. *Helton*, 832 F.2d at 334–35.

Moreover, at least by 2005, Top Dollar knew (or should have known) that every seizure of pledged property was made in contravention of its due process rights. It was then that Top Dollar's ownership "retained attorneys" to object and "dispute the process." It is hard to imagine evidence that more clearly establishes when Top Dollar knew of the allegedly deficient procedures challenged with this lawsuit than the date upon which it hired counsel to object to the process. *See Freeze*, 849 F.2d at 175.

The last seizure complained of occurred December 17, 2010. Top Dollar had a year from that date to bring its Section 1983 claims. Instead, it filed suit on March 6, 2012. Top Dollar's claims are prescribed, and the trial court's grant of summary judgment is AFFIRMED.